UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
97 JUN -2 PM 1:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

CARRIE BLANKENSHIP, )
    Plaintiff(s); )
 )
-vs.- ) No. CV-95-P-2317-S
 )
SOUTH CENTRAL BELL and JAMES T. )
CAMPBELL, JR., )
    Defendant(s). )

ENTERED

JUN - 3 1997

## OPINION

    Defendant South Central Bell, now operating as BellSouth Telecommunications, Inc. ("BellSouth"), filed a Motion for Summary Judgment which was considered at a prior motion docket. For the reasons expressed below, this motion is due to be granted in part and denied in part.

### Facts[1]

    The plaintiff, Carrie Blankenship, began working for BellSouth in 1980. In April, 1991 she began working in BellSouth's Data Center in Hoover, Alabama as a communications technician. Blankenship worked in a group of approximately nine other technicians, all male. Soon after her arrival, she began to be harassed by members of her work group, particularly defendant James T. Campbell, Jr. Many male co-workers used profanity, including vulgar words for women in general. One co-worker referred to Blankenship as a "stupid bitch" and Campbell directed the word "fuck" at her on one occasion. Campbell and other co-employees used foul

---

    1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

language when criticizing her work in front of her supervisor.

In August, 1992, Blankenship informed her supervisor, Gary Smith, that she was being harassed. He told her that she should socialize more with her co-workers. She complained again in November, and Smith told her that she and Campbell should work it out and there should be no more whining. In December, 1992, Blankenship complained again to Smith and also to her former supervisor, Archie Blackmon. When no action was taken, she reported the harassment to a higher supervisor, Charlie Bell, who suggested that she file a complaint with the BellSouth EEO office. On December 11, 1992, Blankenship wrote a letter to the manager of the EEO, Amy Robb, complaining of harassment by coworkers. Robb contacted Blankenship and discussed her complaint. In a few weeks, Campbell and another co-worker apologized to Blankenship and told her that the conduct would not continue, and she withdrew her EEO complaint.

In 1992, Blankenship discovered a tap on her phone line and determined that the tap ran to Campbell's phone line. In April, 1994, cables Blankenship had installed were cut. The incident was reported to security, but they did not make a determination as to who had cut the cables. In May, 1994, Blankenship complained to her supervisor, Bill Lindley, that Campbell and other co-workers were trying to force her to do their work and that Campbell had in the past tapped her phone. In June, 1994 Jack O'Dell became the supervisor of Blankenship's group. He noticed improper profanity in the workplace and was told that Blankenship had previously complained of harassment. Blankenship told him about the tap on her telephone line.

In June, 1994, the plaintiff's husband, Tim Blankenship, began receiving harassing phone calls in which he was told that his wife was "fucking around on him." Blankenship reported the calls to BellSouth security on June 13, 1994, but was told she needed to file a formal complaint

2

to get security involved. She asked to file a formal complaint on June 17, 1994 and was told that the manager of security, Terry Spindle, would get back to her. Tim Blankenship continued to receive harassing phone calls. The caller asked Tim Blankenship to meet him so he could give him something. Tim Blankenship met Campbell, and Campbell gave him a tape of a telephone conversation between Carrie Blankenship and a male recorded in January, 1992. Campbell also discussed matters that could only have been found on a calendar kept in Blankenship's locked desk at work.

Spindle ran a trace on Tim Blankenship's phone line to determine who was making the calls and found that eleven calls to Tim Blankenship were made from the telephone on Campbell's desk at work. Spindle concluded that Campbell made the calls. Spindle also found keys that gave Campbell access to Blankenship's locked desk. Campbell was verbally reprimanded and transferred to another location where he would have no further contact with Blankenship.

On June 29, 1994 Blankenship filed a charge of discrimination with the EEOC. On September 8, 1996, Blankenship filed a complaint against BellSouth stating claims for sexual harassment in violation of Title VII, outrage, and invasion of privacy. On March 14, 1996, Blankenship amended her complaint to add Campbell as a defendant and stating claims for sexual harassment in violation of Title VII by BellSouth, outrage by BellSouth, invasion of privacy by both defendants, and violations of the Federal Wiretap Act ("FWA"), 18 U.S.C. § 2511© and (d), by both defendants.

## Analysis

I.    Title VII

BellSouth argues that it is entitled to summary judgment on Blankenship's sexual

harassment claim because she never filed an internal complaint of sexual harassment. Title VII prohibits discrimination based on sex. 42 U.S.C. § 2000e-2(a). Although it is true that gender-based harassment need not be explicitly sexual in nature, the statute still requires that the plaintiff introduce evidence that the harassment would not have occurred but for the plaintiff's gender. *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985). As well, an employer is not liable under Title VII unless the employer knew or should have known that the alleged harassment was occurring and failed to take prompt remedial action. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989). Blankenship has not introduced sufficient evidence to demonstrate that she was being harassed based on her sex or that her employer should have known that sexual harassment was occurring. Therefore, BellSouth's Motion for Summary Judgment is due to be granted as to Blankenship's claim of sexual harassment in violation of Title VII.

II.   FWA and State Law Claims

BellSouth argues that it is not liable for any actions of Campbell's that might give rise to a violation of the FWA or state law because the actions do not constitute a violation of the FWA or the torts of outrage or invasion of privacy, were outside the line and scope of Campbell's employment and were not ratified by the company. Blankenship argues that Campbell's actions do constitute the torts complained of and were ratified by BellSouth.

To be liable for an employee's intentional tortious conduct, the plaintiff must demonstrate that the employer had knowledge of the tortious behavior committed against her, knew or should have known that the conduct constituted the tort, and failed to take adequate steps to remedy the misconduct. *Potts v. BE & K Construction Co.*, 604 So. 2d 398, 400 (Ala. 1992). As to the claims of wiretapping, Blankenship had introduced no evidence to indicate that BellSouth either

knew of the conduct or failed to remedy it. BellSouth did not even know of the conduct until almost two years after the conduct had ceased. As to the claims of outrage and invasion of privacy, Blankenship has introduced no evidence that demonstrates that BellSouth failed to take adequate steps to remedy Campbell's alleged outrageous and intrusive conduct. After Campbell was reprimanded and transferred, there is no evidence that Blankenship or her husband experienced any further problems with Campbell. Therefore, BellSouth's Motion for Summary Judgment is due to be granted as to Blankenship's FWA claims and claims of outrage and invasion of privacy.

Dated: June 2, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
   Mr. Kyle T. Smith
   Ms. Lisa S. Cross
   Ms. Francis B. Semmes
   Mr. Paul T. Stagliano
   Mr. Steven T. Breaux
   Ms. Gaile Pugh Gratton